1
2
3
4
5
6        **NOT FOR PUBLICATION**
7           IN THE UNITED STATES DISTRICT COURT
8
9           FOR THE NORTHERN DISTRICT OF CALIFORNIA
10   GERALD DUMAGUIT,
11           Plaintiff,                    No. C 06-02042 JSW
12      v.                                 **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
13   JOHN E. POTTER,
14           Defendant.
15
16
17   _____/
18                      **INTRODUCTION**
19           This matter comes before the Court upon consideration of the motion for summary
20   judgment filed by Defendant John E. Potter ("Defendant"), as well as the cross-motion for
21   partial summary judgment filed by Plaintiff Gerald Dumaguit ("Plaintiff").[1] Having considered
22   the parties' papers, relevant legal authority, and the record in this case, and having had the
23   benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART
24   Defendant's motion and HEREBY GRANTS IN PART AND DENIES IN PART Plaintiff's
25   motion.
26
27
28

---

[1]     The Court refers to Defendant and his agents collectively as Defendant, unless it is necessary for purposes of the analysis to identify a particular employee.

**EVIDENTIARY OBJECTIONS**

Defendant objects to Exhibits A-S and Exhibit Y, attached to the declaration of Mary Dryovage ("Dryovage"), on the basis that the exhibits are inadmissible because Dryovage cannot, and did not, properly authenticate them. However at the hearing on these motions, Defendant clarified that he did not object to any exhibit bearing a "USA" prefix. In her supplemental declaration, Dryovage asserts that Exhibits A-S are documents that Defendant produced in related litigation. (*See* Supplemental Declaration of Mary Dryovage ("Supp. Dryovage Decl."), ¶¶ 8-9.) Defendant has not disputed that assertion. Although Exhibits N and S do not bear a USA prefix, based on Dryovage's supplemental declaration, Defendant's objections are OVERRULED. Defendant also objects to the exhibits on the basis that "many of the documents attached [to the Dryovage declaration] are further inadmissible hearsay." Defendant does not identify which exhibits, or portions thereof, he contends are hearsay. Defendant's objections on this basis are OVERRULED. *See N.L.R.B. v. Int'l Union of Operating Eng'rs*, 413 F.2d 705, 707 (9th Cir. 1969) ("Unobjected to hearsay is admissible and of probative value in the district courts.")

Defendant also objects to Exhibits A through L-5, attached to Plaintiff's declaration. Defendant asserts that these documents consist of inadmissible hearsay and asserts that Plaintiff cannot, and did not, properly authenticate these exhibits. Defendant's objections to Exhibits D2, E1, E4, E7, K1-K5, K9-K14, and L1 are SUSTAINED for lack of proper authentication. Defendant's objections to all other exhibits are OVERRULED.

**BACKGROUND**

The United States Postal Service ("USPS") hired Plaintiff in 1978 as a distribution clerk. Defendant promoted Plaintiff throughout his tenure with the USPS and, in 1997, Defendant promoted Plaintiff to the position of EEO Counselor and Investigator, level EAS-17. (Declaration of Gerald Dumaguit ("Dumaguit Decl."), ¶¶ 4-5; Declaration of Andrew Cheng ("Cheng Decl."), Ex. C (Deposition of Gerald Dumaguit ("Dumaguit Depo.") at 14:23-25, 19:3-10).) In April 1999, Defendant detailed Plaintiff to the position of Manager of EEO Complaints Processing, level EAS-21. Plaintiff remained in that position until June 2000. (Dumaguit

Decl., ¶ 5.) Plaintiff received commendations and cash awards while employed with the USPS, and his supervisors evaluated his work as "excellent" or "outstanding." (Dumaguit Decl., Ex. A at 9-19[2]; Supp. Dryovage Decl., Ex. U (Deposition of Randall Sims ("Sims Depo.") at 32:23-33:5, 34:9-14), Ex. V (Deposition of Maria Robinson ("Robinson Depo.") at 32:10-14).) There is no evidence in the record that Plaintiff has been subjected to any form of disciplinary action in connection with his employment. (*See, e.g.,* Supp. Dryovage Decl., Ex. U (Sims Depo. at 33:2-5).)

It is undisputed that the USPS decided to restructure its EEO office ("the 2000 Restructure") and created "Area" positions and "District" positions. (Declaration of Maria Robinson ("Robinson Decl."), ¶ 3; Dumaguit Decl., Ex., E2; Supp. Dryovage Decl., Ex. U (Sims Depo. at 12:24-13:15).) As part of this process, on July 14, 2000, Randall Sims ("Sims") who was a Senior EEO Counselor and Investigator, began to schedule interviews for Area EEO Counselor and Investigator, level EAS-17 positions ("the EAS-17 Area position"). (*See* Dumaguit Decl., Ex. E7; Supp. Dryovage Decl., Ex. U (Sims Depo. at 40:15-24).) Sims advised Plaintiff that he would be required to submit to an interview for the position and attempted to set up an interview with Plaintiff. (Cheng. Decl., Ex. C (Dumaguit Depo. at 24:13-25:4); Supp. Dryovage Decl., Ex. U (Sims Depo. at 39:13-18, 44:22-45:25)).)

Plaintiff states that he did not want to interview because Sims could not give him a reason why there were "two managers of labor relations on the [interview] board." (Cheng Decl., Ex. C (Dumaguit Depo. at 25:5-26:3, 30:15-24).) Sims testified that Plaintiff did not want to interview because he (Plaintiff) believed that Harriet White ("White"), a member of the interview board, was biased against Filipinos and that she had acted improperly with respect to one of Plaintiff's investigations. (Supp. Dryovage Decl., Ex. U (Sims Depo. at 44:22-46:20).) Sims also testified that he spoke with White and with Maria Robinson ("Robinson") about Plaintiff's concerns. Robinson testified that no one raised these issues with her. (Supp. Dryovage Decl., Ex. U (Sims Depo. at 46:21-50:10), Ex. V (Robinson Depo. at 58:17-60:3).)

---

[2] The pages of the exhibit are not numbered and the pagination is the Court's own.

1    Sims ultimately determined there was no potential conflict with White sitting on the interview

2    board.  (*Id.*)

3        After he failed to appear for the interview, Robinson sent Plaintiff a letter dated July 24,

4    2000, which states that "[a]s of July 24, 2000, you became an unplaced EAS-17 EEO

5    professional under Phase II of the EEO restructuring.  You will be given a directed

6    reassignment to an existing vacancy in EEO.  You have until August 7, 2000 to express your

7    preferences."  (Dumaguit Decl., Ex. E8.)[3]  Robinson states that she decided which employees

8    would receive the EAS-17 Area positions.  (Supp. Dryovage Decl., Ex. U (Sims Depo. At 51:6-

9    16), Ex. V (Robinson Depo. at 61:6-13.)

10       On July 24, 2000, Plaintiff sent a letter to Robinson, in which he advised her that he was

11   "requesting a directed reassignment for the vacant position of Dispute Resolution Specialist at

12   the San Francisco District."  (*Id.*, Ex. E9; Cheng Decl., Ex C (Dumaguit Depo. at 28:13-29:18).)

13   Plaintiff testified that he "was basically coerced into submitting this letter.  It was either this or

14   take a risk of getting reassigned somewhere on the East Coast."  Plaintiff states that he advised

15   Robinson that he requested the reassignment under protest.  (Cheng Decl., Ex. C (Dumaguit

16   Depo. at 28:20-29:7, 30:8-10).)

17       Robinson sent Plaintiff a letter dated July 26, 2000, in which she advised him that the

18   effective date of his reassignment would be July 29, 2000.  (Robinson Decl., ¶ 7, Ex. B.)

19   Plaintiff asserts that Robinson and others did not comply with the timelines established by the

20   USPS for the 2000 Restructure.  (*See, e.g.,* Dumaguit Decl., Ex. E2.)  Plaintiff also avers that

21   Robinson filled the available EAS-17 Area positions with seven African American employees

22   and one Caucasian employee.  (*See* Dumaguit Decl., ¶ 15; Supplemental Declaration of Gerald

23   Dumaguit ("Supp. Dumaguit Decl."), ¶ 6.)

24       After Plaintiff was reassigned to the District office, Area positions at the EAS-21 and

25   EAS-23 level became available, although Plaintiff claims that the EAS-21 Area position was

26   vacant well before he was reassigned.  (*See* Supp. Dryovage Decl., Ex. V (Robinson Depo. at

27

28       [3]    The letter lists vacancies within California and vacancies around the country.
     (*Id.*; Supp. Dryovage Decl. Ex. V (Robinson Depo. at 53:2-57:9).)  Plaintiff claims he was
     threatened with reassignment outside California.

51:12-53:1).) According to Plaintiff, "the[se] positions were announced and the selections made well before the Headquarters plan." (Dumaguit Decl., ¶ 14, Ex. E2.) Plaintiff also contends that employees were instructed to hide from him, and from Lina Siam ("Siam"), the fact that these positions were available.[4] (Dumaguit Decl., ¶ 14; *see also* Declaration of Lina Siam ("Siam Decl."), ¶ 9.) It is undisputed that these two positions were filled by William Norris ("Norris") and Sims, both of whom are Caucasian. (*See, e.g.,* Supp. Dryovage Decl., Ex. V (Robinson Depo. at 58:3-8); Dumaguit Decl., Ex. E10; Robinson Decl., ¶ 10.) Plaintiff claims that Norris initially chose to move to a District office but changed his mind and accepted a demotion in order to stay in the Area office because Robinson wanted him to fill the EAS-21 Area position. (*See, e.g.,* Dumaguit Decl., ¶ 17; *see also* Declaration of Mary Dryovage ("Dryovage Decl."), Ex L at USA000335.) Norris has denied that Robinson worked to ensure that he received the position. (Reply Declaration of Andrew Cheng, Ex. G (Trial Testimony of William Norris at 540:21-25).)

On July 31, 2000, Dumaguit requested EEO counseling in connection with his reassignment to the District office. On September 26, 2000, Dumaguit filed his first EEO complaint.[5] (Dumaguit Decl., ¶ 21, Ex. F1.) In December 2000, Plaintiff took stress leave from his job and later filed a claim with the Office of Worker's Compensation Programs ("OWCP"), which was granted. (*See* Dumaguit Decl., Ex. F1 (Amendment to EEO Affidavit, dated March 4, 2001); Declaration of Joel A. Fine ("Fine Decl."), Ex. A at 14.) In January 2001, Plaintiff was diagnosed with major depression. (Cheng Decl., Ex. C (Dumaguit Depo. at 12:11-13); Dumaguit Decl., ¶ 27; Fine Decl. at 2, Ex. A at 49.) Plaintiff also avers that he suffers from chronic gout. (Dumaguit Decl., ¶ 27.)

While Plaintiff was on stress leave, USPS employees posted "Wanted" posters of him and Siam at the office in which they worked. (Dumaguit Decl., ¶ 21; Siam Decl., ¶ 20, Ex. C.)

---

[4]     In 2004, Siam filed suit against Defendant and alleged that she was subjected to a hostile work environment based on her race. (*See* Siam Decl., ¶¶ 11-12, Ex. B.)

[5]     Plaintiff also filed several amendments to that complaint in 2001.

1    Plaintiff contends that Holly Bedell ("Bedell") and May Henderson ("Henderson") were the

2    responsible parties. (*See, e.g.,* Siam Decl., ¶ 20.)

3          On October 5, 2001, Plaintiff again requested EEO counseling. On January 16, 2002, he

4    filed his second EEO complaint. (Dumaguit Decl., ¶ 22.) In March 2003, Plaintiff also filed a

5    complaint with the Office of the Inspector General. In that complaint, Plaintiff reported that he

6    believed the Northern California EEO Complaints Processing Center violated Federal

7    regulations in the course of investigating EEO complaints.[6] (*See* Dumaguit Decl. ¶ 9, Ex. D4.)

8          In June 2004, Brenda Arce requested, and received, approval to separate Plaintiff from

9    employment with the USPS. (Dumaguit Decl., Ex. L1; Declaration of Diana Cruz-Crowder

10   ("Cruz-Crowder Decl.") at 3.) On June 29, 2004, Beverly Harris sent Plaintiff a letter, which

11   provides:

12        Our records show that you have been on the rolls of the [OWCP] in excess
          of one year. During this time you have been carried in a leave without pay
13        (LWOP) status with the U.S. Postal Service in the San Francisco District.

14        In accordance with section 365.342b of the Employee & Labor Relations
          Manual (ELM) "If an employee on the rolls of the [OWCP] is unable to
15        return to work at the end of the initial one year period of LWOP, the LWOP
          may be extended for successive additional periods of up to six months each.
16        Extensions are granted only if it appears likely that the employee will be able
          to return to work within the period of the extension. If it does not appear
17        likely that the employee will be able to return to work during the period of
          the extension the employee, upon the approval of the area manager of Human
18        Resources is separated subject to reemployment rights." Our office has been
          granted approval to separate you from the rolls of the Postal Service for
19        disability reasons.

20   (Dumaguit Decl., Ex. L2.) Plaintiff was advised, as an alternative, that he could seek disability

21   retirement. (*Id.*) Defendant sent Plaintiff a second notice of the proposed separation, dated

22   August 19, 2004, which advised him that he or his representative could "answer this proposal

23   within ten (10) days from [the] receipt of this letter, in person, in writing, or both" to White.

24

25

26

27   ─────────────

28        [6]    Plaintiff contends that he complained to Bernadine Faison ("Faison") about
     questionable practices in the EEO Office in 1997 and the record suggests that he continued to
     voice his opposition to certain practices through 1999. (*See* Dumaguit Decl., Ex. F1 at 3.)

(*Id.*, Ex. L3.)[7]  On August 23, 2004, Plaintiff requested EEO counseling.  (Dumaguit Decl., ¶ 23.)

On September 8, 2004, Plaintiff sent Cruz-Crowder a letter, in which he stated that he had attempted, unsuccessfully, to obtain retirement counseling.  Plaintiff stated that "I am ... submitting my disability retirement application under duress."  (*Id.*, Ex. L4.)  On September 24, 2004, White sent Plaintiff a letter advising him that she had decided to separate him from the USPS effective September 30, 2004.  (*Id.*, Ex. L5.)  White stated that "[i]n reaching my decision, I have considered your past work record, your years of employment, your inability to perform the duties of your position, and the impact on Postal Service efficiency."  (*Id.*)  Although the approval to separate Plaintiff came from "headquarters," White testified that she was the final decision maker.  (Dryovage Decl., Ex. T1(6/26/07 Deposition of Harriet White ("White Depo. I") at 83:10-17, 98:20-22).)  On December 28, 2004, Plaintiff filed his third and final EEO complaint.  (Dumaguit Decl., ¶ 23.)

On March 17, 2006, Plaintiff filed his Complaint in this Court, in which he asserts four claims for relief: (1) Unlawful Discrimination Based on Race/National Origin; (2) Unlawful Discrimination Based on Disability; (3) Unlawful Discrimination Based on Retaliation; and (4) Retaliation - Whistleblower Protection Act.  (Compl., ¶¶ 62-100.)

**ANALYSIS**

**A.    Legal Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light

---

[7]    This letter was signed by Diana Cruz-Crowder ("Cruz-Crowder"), but she did not author it, and she says it was not her decision to send it.  (Cruz-Crowder Decl. at 4.)

most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence that negates an essential element of the non-moving party's claims, or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must be sure to point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.      Plaintiff's Cross-Motion is Granted in Part and Denied in Part.**

In his answer, Defendant asserted that Plaintiff had failed to exhaust administrative remedies and also asserted that Plaintiff's claims were time barred. (Answer at 7:7, 7:28-8:1.) Plaintiff cross-moved for partial summary judgment on these affirmative defenses, and this

aspect of Plaintiff's motion is unopposed.  Plaintiff's motion is GRANTED IN PART on this basis.  Plaintiff also cross-moved for summary judgment on the issues of whether he has established a prima facie case of discrimination and retaliation.  "It is not normally appropriate to introduce the *McDonnell Douglas*[8] burden-shifting framework to the jury."  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002).[9]  Plaintiff's motion is DENIED IN PART on this basis.

**C.    Defendant's Motion Is Granted in Part and Denied in Part on Plaintiff's First Claim for Relief.**

Title VII provides that, "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."  42 U.S.C. § 2000e-2(a)(1).  An employer also may violate Title VII when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

**1.    Legal Standards.**

In general, disparate treatment claims are evaluated under the *McDonnell Douglas* framework, in which "the burden of production first falls on the plaintiff to make a prima facie case of discrimination."  *Coghlan v. American Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005).  If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to present evidence "sufficient to permit the factfinder to conclude that the employer had a legitimate nondiscriminatory reason for the adverse employment action."  *Id.* (citing *St Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993)).  If the employer meets its burden, "the

---

[8]        *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[9]        One exception to this general rule is when there are factual disputes over whether a plaintiff has established a prima facie case of discrimination.  *See Costa*, 299 F.3d at 855 n.6.

*McDonnell Douglas* framework drops out of the picture entirely, and the plaintiff bears the full burden of persuading the factfinder that the employer intentionally discriminated against him." *Id.* That is, the plaintiff bears the burden of showing that the employer's reason for the adverse employment action was pretextual. *See, e.g., Vasquez v. County of Los Angeles,* 349 F.3d 634, 640 (9th Cir. 2004).

## 2. Discussion.

### a. Denial of Promotional Opportunities.

Plaintiff contends that Defendant denied him two promotional opportunities because he was Filipino. Plaintiff argues that Defendant did not select him for the EAS-17 Area position during the 2000 Restructure. Plaintiff also contends that Defendant denied him the opportunity to compete for the EAS-21 and EAS-23 Area positions, which were posted shortly after Plaintiff's directed reassignment to the District office became effective.

#### i. Plaintiff has met his burden to establish a prima facie case of discrimination.

To establish a prima facie case of discrimination, Plaintiff must show that: "(1) he belongs to a statutorily protected class, (2) he applied for and was qualified for an available position, (3) he was rejected despite his qualifications, and (4) after the rejection, the position remained available and the employer continued to review applicants possessing comparable qualifications." *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002); *see also McGinest v. GTE Servs., Inc.*, 360 F.3d 1103, 1122 n.17 (9th Cir. 2004). To meet his burden of proof, Plaintiff need not offer evidence that "rise[s] to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot*, 26 F.3d 885, 889 (9th Cir. 1994).

It is undisputed that Plaintiff is a member of a protected class. In addition, the record reflects that Plaintiff was qualified for the EAS-17 Area position, and that he may have been qualified to fill the EAS-21 and EAS-23 Area positions, thereby establishing the second and third prongs of his prima facie case. Defendant argues that Plaintiff cannot meet the fourth prong of his prima facie case because he cannot show that any employees who did not interview for an EAS-17 Area position were hired and because Plaintiff cannot show that any District

1    employees were hired for the EAS-21 and EAS-23 Area positions, which Defendant contends

2    were available only to Area employees.[10]  Plaintiff avers, however, that seven African

3    Americans and one Caucasian were selected for the EAS-17 Area position for which he had

4    applied.  (Dumaguit Decl., ¶15.)  Defendant has not proffered any contrary evidence.  It also is

5    undisputed that the EAS-21 and EAS-23 positions were filled by Norris and Sims, both of

6    whom are Caucasian.  Plaintiff needs only a minimal showing to establish a prima facie case of

7    discrimination, and the Court finds that Plaintiff has met his burden.

8              **ii.      Defendant proffers a legitimate non-discriminatory reason for
                          his actions.**

9

10          Defendant posits that Plaintiff did not receive the EAS-17 Area position because he was

11   required to submit to an interview and failed to do so.  (*See* Dumaguit Decl., Ex. E7; Supp.

12   Dryovage Decl., Ex. U (Sims Depo. at 39:13-18, 40:15-24, 44:22-46:20); Robinson Decl., ¶ 9.)

13   Defendant also asserts that Plaintiff was not eligible for the EAS-21 and EAS-23 Area positions

14   because those positions were open only to Area employees, and Plaintiff was a District

15   employee.  (*See, e.g.,* Robinson Decl., ¶ 11.)  Defendant has met his burden to show that he had

16   legitimate, non-discriminatory reasons for not selecting Plaintiff for these positions.

17             **iii.     Plaintiff has met his burden to show there are genuine issues of
                          material fact in dispute about whether Defendant's reasons were a
18                        pretext for discrimination.**

19          A plaintiff may "show pretext directly, by showing that discrimination more likely

20   motivated the employer, or indirectly, by showing that the employer's explanation is unworthy

21   of credence."  *Vasquez*, 349 F.3d at 641.  In *Wallis*, the Ninth Circuit noted that although a

22   plaintiff can establish a prima facie case of discrimination with minimal evidence, once the

23   *McDonnell Douglas* presumption falls away, a plaintiff must do more.  Although, a court can

24   consider the evidence that established a plaintiff's prima facie case, if a plaintiff relies on

25   circumstantial evidence of discrimination, that evidence must be "specific and substantial."

_____

26

27            [10]      Defendant attempts to identify comparable employees by using his
      purportedly legitimate reasons for the adverse actions at issue.  In the Court's view, to adopt
28    Defendant's argument would unduly restrict Plaintiff's ability to establish a prima facie case
      of discrimination.

*Wallis*, 26 F.3d at 892; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). "[A] plaintiff's belief that a defendant acted from unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen*, 237 F.3d at 1028.

Although the Court concludes that Plaintiff has not presented evidence to suggest that Defendant's reason for denying him the EAS-17 Area position was pretextual, Plaintiff asserts that the manner in which Defendant implemented the 2000 Restructure was designed to prevent him, and other employees of Filipino descent, from competing for the EAS-21 and EAS-23 Area positions. Plaintiff does not rely merely on his own subjective belief that Defendant's actions were motivated by racial considerations. Plaintiff submits evidence that, taken in the light most favorable to him, suggests that Defendant did not follow established timelines with respect to his reassignment to the District. (Dumaguit Decl., ¶ 13, Ex. E2.) Plaintiff also submits evidence that Defendant's agents did not post the openings for the EAS-21 and EAS-23 positions until after he had been reassigned, so that Norris and Sims could be given the positions, although Defendant denies these allegations. Plaintiff's case may not be the most compelling but the Court must take the facts and the reasonable inferences therefrom in the light most favorable to Plaintiff. Under that standard, the Court concludes that Plaintiff has met his burden to show there genuine issues of material in dispute about whether he was denied the EAS-21 and EAS-21 Area promotional opportunities on account of his race.[11]

### b. Termination.

In order to make a prima facie case under this aspect of his disparate treatment claim, Plaintiff must show that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4)

---

[11] Plaintiff also alleges that Defendant discriminated and retaliated against him because he was excluded from the "FY 2001 Variable Pay Program," and because Defendant failed to return over 1100 hours of used leave to him. (Compl., ¶¶ 47-53, 62-68, 83-94; Plaintiffs' Opp. Br. at 8; Dumaguit Decl., ¶ 26; *see also* Cruz-Crowder Decl. at 5.) Defendant did not address these factual allegations in his opening brief or in his reply. Assuming Plaintiff intends to maintain a disparate treatment or retaliation claim based on these actions, the Court concludes that Defendant has not met his burden to show that summary judgment is warranted.

other employees with similar qualifications to his own were treated more favorably. *See Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). It is undisputed that Plaintiff satisfies the first and third elements of his prima facie case. Further, until he went out on stress leave, there is no evidence to suggest that Plaintiff was not living up to Defendant's expectations. However, even assuming that Plaintiff could establish the fourth prong of his prima facie case, the Court concludes that he has not presented sufficient evidence to show that Defendant's reasons for terminating him actually were motivated by race.

Defendant contends that he terminated Plaintiff because Plaintiff had been on OWCP rolls for over two years. According to Defendant, Postal Regulations provide that "[i]f an employee on the rolls of the [OWCP] is unable to return to work at the end of the initial one year period of LWOP, the LWOP may be extended for successive additional periods of up to six months each. Extensions are granted only if it appears likely that the employee will be able to return to work within the period of the extension. If it does not appear likely that the employee will be able to return to work during the period of the extension the employee, upon the approval of the area manager of Human Resources is separated subject to reemployment rights." (*See* Dumaguit Decl., Ex. L3.) The only evidence that Plaintiff proffers to show that White's decision to terminate him was racially motivated is his subjective belief that White did not like Filipinos. (Cheng Decl., Ex. C (Dumaguit Depo. at 147:90-25).) This is not the type of specific and substantial evidence that would demonstrate pretext. *Carmen*, 237 F.3d at 1028.

### c. Hostile Work Environment.

Defendant did not raise the hostile work environment claim in his opening brief. Plaintiff, however, raised his allegations in opposition to Defendant's motion, and Defendant addressed the claim on reply, albeit in a footnote. The Court concludes that this claim is ripe for adjudication. In order to prevail, Plaintiff must demonstrate that he was subjected to verbal or physical conduct of a harassing nature that was sufficiently severe or pervasive so as to alter the conditions of his employment. Simple or occasional teasing will not be considered conduct so extreme as to amount to a change in the terms and conditions of employment. *See Faragher*, 524 U.S. at 786-88.

13

To support this claim, Plaintiff relies on the fact that either Henderson or Bedell posted the Wanted poster of him. He also claims that White made a reference to the District office becoming "Manila Town" if a Filipino employee took over as manager of the personnel office. (Dumaguit Decl., ¶ 21, Ex. F1 at 7.) The other incidents on which he relies were directed at Siam, although Plaintiff says he witnessed some of them. (*See, e.g.,* Dryovage Decl., Ex. A.) Indeed, Plaintiff relies heavily on the evidence submitted in Siam's case. (*See, e.g.,* Dryovage Decl., Exs. A-S; Supp. Dryovage Decl., ¶ 8; Siam Decl., ¶¶ 11-18, 20.) Judge Patel, however, granted Defendant's motion for summary judgment on this claim and found that Siam had "shown only a few isolated incidents that were not objectively serious or frequent enough to interfere with plaintiff's ability to do her job." Judge Patel also found that Siam had "not demonstrated that hostility toward her stemmed from her identity as an Asian female." (*See* Siam Decl., Ex. B (Memorandum and Order at 23:11-19).)

Construing the evidence submitted in the light most favorable to Plaintiff, the Court concurs with Judge Patel's reasoning in the *Siam* case, and finds that Plaintiff has not presented evidence to show that the conduct in question was so severe or pervasive that it effectively altered the terms and conditions of his employment. *See, e.g., Vasquez,* 349 F.3d at 642-44 (finding sporadic references to plaintiff's race could not support a hostile work environment claim); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1031, 1036-37 (9th Cir. 1990) (rejecting claims of hostile work environment premised on explicit racial slurs, posting of a racially offensive cartoon, and upon claims that Latino officers were treated differently than other races).

Defendant's motion is GRANTED IN PART AND DENIED IN PART on Plaintiff's first claim for relief.

**D.     Defendant Motion is Granted in Part and Denied in Part on Plaintiff's Second Claim for Relief.**

Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

1  compensation, job training, and other terms, conditions, and privileges of employment." 42

2  U.S.C. § 12112(a). "Discrimination," includes "not making reasonable accommodations to the

3  known physical or mental limitations of an otherwise qualified individual with a disability who

4  is an applicant or employee, unless such covered entity can demonstrate that the

5  accommodation would impose an undue hardship on the operation of the business of such

6  covered entity."

7  *Id.* § 12112(b)(5)(A); *see also Toyota Motor Mfg., Kentucky v. Williams*, 534 U.S. 184, 193

8  (2002).

9      **1.    Legal Standards.**

10      Plaintiff contends that Defendant terminated him because of his disability and also

11  contends that Defendant failed to provide reasonable accommodations for his disability. The

12  Ninth Circuit has adopted the *McDonnell Douglas* burden shifting framework in the context of

13  disability discrimination cases. *See Mustafa v. Clark Co. Sch. Dist.*, 157 F.3d 1169, 1175-76

14  (9th Cir. 1998). Plaintiff first must show that: (1) he is disabled within the meaning of the ADA;

15  (2) he is a qualified individual, "meaning [he] can perform the essential functions of [his] job,"

16  with or without reasonable accommodation, and (3) Defendant terminated him. *See Nunes v.*

17  *Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). If Plaintiff establishes his prima

18  facie case, the burden shifts to Defendant to offer a legitimate non-discriminatory reason for

19  terminating Plaintiff. If Defendant proffers such a reason, the burden shifts back to Plaintiff to

20  show that Defendant's reason is actually a pretext for discrimination. *Lucero v. Hart*, 915 F.2d

21  1367, 1371 (9th Cir. 1990) (citing *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir. 1987)).

22      **2.    Discussion.**

23          **a.    Plaintiff has met his burden, in part, to show he is disabled.**

24      The ADA defines disability as "(A) a physical or mental impairment that substantially

25  limits one or more of the major life activities of such individual; (B) a record of such an

26  impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12012(2); *see*

27  *also* 29 C.F.R. § 1630.2(g). The impairments at issue in this case are depression and gout. To

28  determine whether either of these impairments qualifies as a disability under the ADA, the

Court evaluates the facts as they existed at the time Defendant allegedly refused to accommodate Plaintiff and as they existed at the time Defendant terminated Plaintiff. *See, e.g., Deppe v. United Airlines*, 217 F.3d 1262, 1265 & n. 11 (9th Cir. 2000) (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)).

### i. Plaintiff has not established that he is actually disabled.

Plaintiff can establish that he is disabled if he can show that depression or gout substantially limited a major life activity. Plaintiff does not clearly articulate which major life activity is at issue. Based on the Investigative Report prepared in connection with Plaintiff's third EEO complaint, it appears that Plaintiff claims that gout rendered him unable to walk, drive, or stand for prolonged periods of time. (Dumaguit Decl., Ex. F3 at 16; *see also* Fine Decl., Ex. A at 12-13.) In addition, the record also suggests that Plaintiff claims that depression impacted his ability to sleep and to work.[12]

The Supreme Court has held that "substantially limits" means that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives" and which also is "permanent or long term." *Toyota Motor Mfg. Co., Kentucky, Inc. v. Williams*, 534 U.S. 194, 199 (2002); *see also Sutton v. United Airlines, Inc.*, 527 U.S. 471, 492 (1999) (noting that "'substantially' suggests 'considerable' or 'specified to a large degree'"); 29 C.F.R. § 1630.2(j)(1) ("substantially limits" means "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity").[13]

---

[12] In *Sutton*, the Supreme Court assumed, without deciding, that working is a major life activity, and Ninth Circuit authority is in accord. *Sutton*, 527 U.S. at 492; *Thornton v. McClatchy*, 261 F.3d 789, 795 n.1 (9th Cir. 2001). The Ninth Circuit has found sleeping to be a "major life activity." *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir. 1999), *as amended* 201 F.3d 1211 (9th Cir. 2000).

[13] 29 C.F.R. § 1630.2 also sets forth factors used to determine if an individual is substantially limited in a major life activity. *Id.* § 1630.2(j)(2.)

"To be substantially limited in the major life activity of working, ... one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton*, 527 U.S. at 492; *see also* 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

The Court concludes that Plaintiff has not put forth sufficient evidence to show gout substantially limited his ability to walk. *See Toyota Mfg.*, 534 U.S. at 199 (holding that medical diagnosis alone will not suffice to establish that impairment substantially limits a major life activity). The Court also finds that Plaintiff has not presented sufficient evidence that gout substantially limited his ability to work, because Dr. Fine suggested that he could perform a job that would not require prolonged standing. Therefore, the Court finds Plaintiff has not met his burden to show that he was disabled due to gout.[14]

Plaintiff declares, in general, that he had difficulty sleeping, but apart from this general statement, there is no evidence in the record to show how depression "substantially limited" his ability to sleep. *See McAlindin*, 192 F.3d. at 1235 (concluding that genuine issues of material fact existed where in addition to plaintiff's testimony, his physician explained that medication disrupted his normal sleep patterns and caused him to be drowsy at work). The Court concludes that Plaintiff has not met his burden to show that depression substantially limited his ability to sleep.

Plaintiff testified that he could perform the duties of his job, notwithstanding his depression, if he did not have to work with certain individuals. (Cheng Decl., Ex. C (Dumaguit Depo. at 14:1-12.) Similarly, Dr. Fine avers that he could not find "anything in his records which would indicate that [Plaintiff] could not work in an appropriate position in the [USPS] with the appropriate accommodations and this has been true since the summer of 2001." (Fine

---

[14] The Court also concludes that Plaintiff has not set forth sufficient evidence to show that he has a record of a disability because of gout or that Defendant regarded him as disabled because of gout.

Decl. at 5; *see also id.*, Ex. A at 13, 14 (suggesting Plaintiff could work, albeit under certain restrictions).)  This evidence demonstrates that Plaintiff was not "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes."  *Sutton*, 527 U.S. at 492; 29 C.F.R. § 1630.2(j)(3)(i).  Plaintiff, therefore, has not shown that he was disabled due to depression.[15]

### ii.        Regarded as Having a Disability.

To establish that Defendant regarded him as disabled, Plaintiff must show that (1) Defendant mistakenly believed that Plaintiff had a physical or mental impairment that substantially limited one or more major life activities; or (2) Defendant mistakenly believed that "'an actual, non-limiting impairment substantially limit[ed] one or more major life activities.'" *Walton v. United States Marshals Service*, 492 F.3d 998, 1005-06 (9th Cir. 2006) (quoting *Sutton*, 527 U.S. at 489); *see also* 29 C.F.R. § 1630.2(l).  "In both cases, it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting."  *Sutton*, 527 U.S. at 489.

In addition to the testimony cited above by Plaintiff and Dr. Fine, the OWCP determined that Plaintiff had suffered a compensable on the job injury, and Plaintiff was placed on OWCP rolls.  (*See, e.g.,* Dumaguit Decl., Exs. L2, L3.)  Defendant does not dispute that his agents were that Plaintiff had been diagnosed with depression.  Although the letter of separation states that Defendant's decision was premised upon Plaintiff's "inability to perform the essential functions of [his] position," there also is also evidence in the record to suggest that Defendant may have made some efforts to find Plaintiff other positions within the USPS and that it offered him vocational rehabilitation.  (*Id.*, L2; *see also* Cheng Decl., Ex. D ("Deposition of Harriet White ("White Depo.") at 103:9-18 (describing letter of separation as a letter of decision "[t]o separate [Plaintiff] for disability reasons"); Fine Decl., Ex. A at 4, 16.)

---

[15]        Because Plaintiff has not established that he was disabled and because the record does not suggest that Defendant regarded Plaintiff as disabled, that he had a record of a disability at the time he claims Defendant failed to accommodate him, he cannot establish this aspect of his disability discrimination claim.

Taking these facts, and all reasonable inferences therefrom, in the light most favorable to Plaintiff, the Court finds that a reasonable jury could conclude from this evidence that, at the time Defendant decided to separate Plaintiff from employment, Defendant mistakenly perceived Plaintiff to be substantially limited in his ability to work in a broad class of jobs, rather than that Defendant believed that Plaintiff was unable to fulfill the duties of his former position. *See Holihan v. Lucky Stores, Inc.*, 87 F.3d 362, 366 (9th Cir. 1996) (finding that genuine issues of material fact were in dispute about whether defendant regarded plaintiff's mental condition as disabling, where defendant had twice discussed aberrational behavior with plaintiff, had asked plaintiff if he had any problems, and was aware of medical diagnoses of anxiety and stress).

>    **b.** **There are genuine issues of material fact in dispute on the remaining aspects of Plaintiff's claim for disability discrimination.**

Having concluded that there are genuine issues of material fact in dispute about whether Defendant regarded Plaintiff as disabled at the time Plaintiff was terminated, the Court turns to the remaining aspects of Plaintiff's prima facie case. Under the ADA, a "'qualified individual with a disability,' [means] an 'individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Sutton*, 527 U.S. at 478 (quoting 42 U.S.C. § 12111(8)); *see also Lucero*, 915 F.2d at 1372. Defendant asserts that Plaintiff cannot show that he can perform the essential functions of his job, because he failed to report to work and argues it would have been unreasonable to have continued him on an indefinite leave of absence.

That is not Plaintiff's claim. Rather, Plaintiff asked to return to work, albeit under a different supervisor or, in the alternative, that Defendant provide him with another position within the USPS. Reassignments to vacant positions can be reasonable accommodations under the ADA. *See* 42 U.S.C. § 12111(9)(b). The record demonstrates Plaintiff's qualifications for his job, and both he and Dr. Fine attest that he could have performed his duties under a different supervisor or in a different district. Plaintiff also submits evidence that alternate jobs may have been available. (*See* Declaration of Diana Cruz-Crowder at p. 3; Supp. Dumaguit Decl., ¶ 8.)

1  Defendant presents no evidence that, at the time Plaintiff was terminated, reassignment would

2  have posed an undue hardship or that other positions were not available.

3  Defendant also argues that Plaintiff was terminated because he had been on OWCP rolls

4  for more than one year.  Although this could be a legitimate reason for terminating Plaintiff,

5  Plaintiff presents evidence that suggests Defendant may not have followed proper procedures

6  before he was terminated because Defendant did not provide Plaintiff with an opportunity to

7  obtain retirement counseling.  (*See, e.g.,* Cruz-Crowder Decl., Ex. B (ELM Manual §

8  365.342(d), (e), (f)); Dumaguit Decl., Ex. L4.)  The Court concludes that genuine issues of

9  material fact are in dispute about whether Defendant terminated Plaintiff because he regarded

10  Plaintiff as disabled.

11  Defendant's motion is GRANTED IN PART AND DENIED IN PART on Plaintiff's

12  second claim for relief.

13  **E.    Defendant's Motion is Granted in Part and Denied in Part on Plaintiff's Third
         Claim for Relief.**

14

15  Title VII prohibits an employer from "discriminat[ing] against any of his employees ...

16  because he has opposed any practice made an unlawful employment practice by this subchapter

17  or because he has made a charge, testified, assisted, or participated in any manner in an

18  investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

19  **1.    Legal Standards.**

20  Plaintiff's retaliation claim also is evaluated under the *McDonnell Douglas* burden

21  shifting framework.  *See McGinest*, 360 F.3d at 1124; *see also Vasquez*, 349 F.3d at 644-46.

22  Thus, a plaintiff must establish a prima facie case of retaliation.  If he does so, the burden shifts

23  back to a defendant to offer a legitimate, non-retaliatory reason for his or her action.  If a

24  defendant meets this burden, a plaintiff must then put forth evidence to show that the

25  defendant's proffered reason is a pretext for retaliation.  *Id.*

26  **2.    Discussion.**

27  To establish a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in

28  protected activity under Title VII; (2) he suffered an adverse employment action; and (3) that

there is a causal nexus between the two events. *McGinest*, 360 F.3d at 1124. Defendant does not dispute that Plaintiff engaged in protected activity or that Plaintiff suffered adverse employment actions. Rather, Defendant argues Plaintiff cannot establish the requisite causation between the adverse employment actions and the protected activity.

> **a.** **Plaintiff has not established the requisite causal connection between his informal complaints and the denial of the promotional opportunities in 2000.**

Plaintiff contends that Defendant's decisions to deny him the EAS-17 Area position and the EAS-21 and EAS-23 Area positions were made in retaliation for his informal complaints about the alleged irregularities in the manner in which the EEO office processed complaints.[16] The timing of an adverse employment action alone may establish causation when the adverse employment action follows closely in time to the protected activity. *See, e.g., Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989) (sufficient evidence to establish prima facie case of causation where adverse actions occurred less than sixty days after EEOC hearing); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding that evidence was sufficient to establish causation where adverse actions occurred less than three months after employee filed complaint).

Based on the record, Plaintiff voiced his complaints to Faison at some vague point between 1997 and 1999. (*See* Dumaguit Dec., Ex. F1 at 4.) Faison, however, was not involved with the employment decisions attendant to the 2000 Restructure, and the Court has found no evidence in the record to suggest that either Sims or Robinson were aware of the fact that Plaintiff had complained to Faison about these issues. The Court concludes that Plaintiff has not established the requisite causal connection necessary to establish a prima facie case of retaliation on this basis.

//

---

[16] It is unclear to the Court whether Plaintiff contends that the decision to restructure the EEO Office into Area and District positions is an adverse action brought about by his informal complaints regarding irregularities in the EEO office. To the extent he does make that assertion, the Court concludes Plaintiff has not proffered evidence that this decision was causally connected to his informal complaints. Defendant's motion is GRANTED IN PART on this basis.

1 //

2 //

        **b.**      **Plaintiff has not established the requisite causal connection between his informal complaints and the first EEO complaint and the failure to accommodate his alleged disability.**

Plaintiff requested further EEO counseling in October 2001 and filed his second EEO complaint in January 2002, in which he claimed that Defendant failed to accommodate his alleged disability. The Court finds no evidence in the record to suggest that anyone involved in that decision making process was aware of Plaintiff's earlier informal complaints or was aware of his first EEO complaint. Accordingly, the Court concludes that Plaintiff has not established the requisite causation necessary to establish a prima facie case of retaliation on this basis.

        **c.**      **Plaintiff has not established the requisite causation between his informal complaints, the EEO complaints, the Whistleblowing complaint, and the decision to terminate him.**

Plaintiff made his final request for EEO counseling in August 2004, after he received the notice of proposed separation. He was terminated in September, 2004. As noted, White authored the termination letter and, although she did not initiate the separation process, she made the final decision to terminate Plaintiff. Based on the evidence presented, it is reasonable to infer that White knew about Plaintiff's first EEO complaint and that he had implicated her in connection with his hostile work environment claim. (*See, e.g.,* Dumaguit Decl., Ex. F3 at 9.) However, there is no evidence that she knew of his intervening complaints or that, at the time she issued the separation letter, that she knew he had requested EEO counseling with respect to the proposed separation. In light of the time that elapsed between the filing of Plaintiff's initial EEO complaint and the date on which he was terminated, and in light of White's apparent lack of knowledge of the intervening complaints, the Court concludes that Plaintiff has failed to establish the requisite causal connection necessary to establish a prima facie case of retaliation on this basis.

Plaintiff also argues that he was terminated because of the fact that he filed a Whistleblowing complaint with the Office of the Inspector General in March 2003.[17] Plaintiff has not presented evidence that anyone involved in the decision to terminate him knew of this complaint. Moreover, according to his declaration, the fact that he filed this complaint did not come to light until March 2005, after Plaintiff had been terminated. (Dumaguit Decl., ¶¶ 9-10.) The Court therefore concludes he has not established the requisite causal connection to meet his prima facie case of retaliation based on the filing of that complaint.

> **d.** **Plaintiff has established a prima facie case in connection with the Wanted Poster, and Defendant proffers no reason for that action.**

Plaintiff requested EEO counseling regarding his directed reassignment on July 31, 2000, and filed his first EEO complaint in September 2000. Plaintiff contends that Henderson retaliated against him by posting the Wanted poster at some point between January and April 2001. (*Id.*, Amendment dated May 21, 2001; Siam Decl., ¶20.) Henderson was named in Plaintiff's initial complaint, and one of the amendments to that complaint suggests that the EEO investigator had contacted Henderson. (*Id.*, Ex. F1 at 7, 9, and Amendment dated May 21, 2001.) It is, therefore, reasonable to infer that Henderson learned of Plaintiff's EEO complaint against her. The Court finds that this evidence is sufficient to establish the minimal showing of causation necessary to meet Plaintiff's burden of a prima facie case of retaliation. Defendant has not offered a legitimate non-retaliatory reason for this action. That is not to say Defendant does not have one. He just has not presented evidence of that reason in connection with these motions. Accordingly, the Court concludes that Defendant has not met his burden to show summary judgment is warranted on this portion of Plaintiff's third claim for relief.

Defendant's motion is GRANTED IN PART AND DENIED IN PART on Plaintiff's third claim for relief.

---

[17] Plaintiff's brief suggests that he filed a formal complaint in July 2000, but Plaintiff's declaration and exhibits contradict this suggestion. (Dumaguit Decl., ¶ 20, Ex. D4.)

**F.      Defendant's Motion is Granted on Plaintiff's Fourth Claim for Relief.**

Plaintiff also asserts that Defendant violated the Whistleblower Protection Act ("WPA"). Defendant argues that Plaintiff cannot prevail on this claim because the USPS is exempt from the terms of the WPA.  Section 2302(a)(2)(C) of the WPA, defines an "agency" as an "Executive agency and the Government Printing Office."  "Executive agency" is defined as "an Executive department, a Government corporation, and an independent establishment."  *Id.* § 105.  Although the USPS is an independent establishment, *see* 39 U.S.C. § 201, it is excluded from the definition of an independent establishment under the WPA.  *See* 5 U.S.C. § 104(1); *see also Booker v. Merit Systems Protection Board*, 982 F.2d 517 (Fed. Cir. 1992).  The plain language of the statute therefore demonstrates that, as a matter of law, Plaintiff cannot maintain this claim.

This conclusion is reinforced by the Federal Circuit's opinion in *Booker*.  In that case, the court concluded that, although a postal employee can assert whistleblowing activities as an affirmative defense, an employee cannot bring an independent action based on whistleblowing activities.  *Id.* at 519; *see also Madden v. Runyon*, 899 F. Supp. 217, 225 (E.D. Pa. 1995).[18]  The Court has considered Plaintiff's remaining arguments on this issue and concludes that the authorities cited are not inconsistent with the holding in *Booker*.

Defendant's motion is GRANTED as to the fourth claim for relief.

### CONCLUSION

For the reasons set forth in this Order, Plaintiff's cross-motion is GRANTED IN PART AND DENIED IN PART.  Defendant's motion is GRANTED IN PART AND DENIED IN PART.  The parties are FURTHER ORDERED to appear for a case management conference on **Friday March 14, 2008 at 1:30 p.m.**  The parties shall submit a joint case management conference statement by no later than March 7, 2008, setting forth proposed pretrial and trial

//

---

[18]      The only Ninth Circuit authority brought to the Court's attention relating to this claim is *Nazario-Acosta v. Potter*, 140 Fed. Appx. 657 (9th Cir. 2005).  Although the Ninth Circuit cited *Booker* with approval and concluded that the plaintiff could not pursue a claim under the WPA, the opinion is unpublished and contains no independent analysis of this issue.

dates and a joint proposal regarding further ADR proceedings.

**IT IS SO ORDERED.**

Dated: February 13, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE